UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

-vs- Case No. 20-CR-150

ERIC JENT,

Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Eric Jent, by his attorney, Thomas J. Erickson, pursuant to the Due Process provisions of the Fifth Amendment to the United States Constitution as well as Rule 32(c) of the Federal Rules of Criminal Procedure, respectfully submits the following Sentencing Memorandum which requests a downward departure from the sentencing guidelines based on an analysis of factors set forth in 18 U.S.S.G. s. 3553(a).

It is expected that the pre-sentence report will conclude, upon application of the 2021 Sentencing Guidelines Manual, the Defendant is in a guideline imprisonment range of 30 to 37 months based on an offense level of 19 and a criminal history category I.[1]

Given the non-violent nature of the Defendant's criminal conduct, his mental illness as a precipitating cause of the conduct, and his pro-social characteristics, the Defendant requests a sentence of two to three years of probation.

## I. SENTENCING METHODOLOGY

Post-*Booker*, a court may impose a sentence with the applicable guideline range,

[1] The PSR stated that it was not in agreement with the application of the acceptance of responsibility points; however the offense level of 19 as stated in the PSR is correct.

or impose a non-guideline sentence if it is justified by. 3553(a) factors. *See United States v. Crosby*, No 03-1675, 2005 U.S. App. LEXIS 1699 at 25 (2d Cir. Feb 2, 2005).

Title 18 U.S.C. s. 3553(a) requires the court to consider seven factors:

1. The nature and circumstances of the offense and history of characteristics of the defendant;

2. The need for the sentence imposed

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. The kinds of sentences available;

4. The sentencing range established by the guidelines;

5. Any pertinent policy statements issued by the Sentencing Commission;

6. The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

7. The need to provide restitution to the victims of the offense.

After considering all of these factors, a court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." *United States v. Galvez-Barrios*, No. 04-CR-14, 2005 U.S. Dist. LEXIS 1997, at *16-17 (E.D. Wis. Feb. 2, 2005).

In *Gall v. United States*, 552 U.S.-, 2007 WL 4292116 (Dec. 10, 2007), the Supreme Court rejected an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range. The Court made it clear that as long as the record demonstrates that a district court has considered the s. 3553(a) factors and supported its sentence with a rationale that is supported by the record, the sentence shall stand.

## II. SENTENCING ANALYSIS

The s. 3553(a) factors can be grouped into three general categories: the nature of the offense, the character of the defendant, and the needs of the public and victims of the offense.

### <u>The Nature of the Offense</u>

The Defendant was an information technology specialist at Froedtert Hospital. On December 23, 2019, after being notified of his impending termination, he temporarily deactivated numerous computers from Froedtert's active directory which rendered the computers unable to connect with other systems within the network for a period of half an hour to forty minutes. While understanding the seriousness of the conduct, the computers were brought back online fairly quickly and there was no incidence of any harm or damage to any patient care. Finally, this was not an incident of the use of malware or bugging; the Defendant's actions did not damage either the computers or the computer network but did cause computers to be taken offline.

Later that day and continuing over the next few days, the Defendant also sent harassing text messages to David Emmons, his supervisor at Froedtert, in which the Defendant threatened to commit suicide because of the treatment he received at Froedtert.

He also made some empty threats about the hospital's IT security system. It is unclear the level of distress these messages caused Mr. Emmons.

The Defendant's actions are not excused but are explained by his mental illness. On December 18, 2019, a mere five days before this incident, the Defendant attended an acute care visit at Froedtert complaining of anxiety and insomnia. Medical records indicate that Defendant was in severe emotional distress while noting that he had missed four days of work within the last two weeks due to his anxiety and panic attacks. He reported that he had been drinking to self-medicate and that he had little family support to rely upon. He was diagnosed at the time with Current Severe Episode of Depressive Disorder without Psychotic Features.

Dr. Collin's psychological evaluation of the Defendant describes his practically non-existent social network and his chaotic and dysfunctional family in a counterpoint to the Defendant's own glossing over these stressors as an underpinning of his emotional and mental health issues. She describes the Defendant's history of suicide, depression, anxiety, and his use of alcohol in response to ameliorate his symptoms. She diagnosed the Defendant with major depressive disorder with moderate to severe alcohol disorder and recommended that he see a psychiatrist and begin treatment.

Presciently, Dr. Collins concludes, "Because his knowledge and skills in information technology and computer systems are his primary source of self-esteem, he is particularly vulnerable to anxiety, frustration, emotional upheaval, and anger when he perceives his related competencies are disrespected and undervalued." (p. 8) The incident at Froedtert and the more minor one which bubbled up in February of this year are related to his, at times, inability to rationally process his vulnerabilities. To his credit,

the Defendant has availed himself of mental health treatment and cut down on his drinking. Of note is that after several months in talk therapy, he is on the cusp of being prescribed psychotropic medications which should also prevent him from falling into similar self-destructive behavior and should further augment his rehabilitation.

Accordingly, the Defendant asks that the court consider that while the conduct was serious, there was no damage caused to the computer network system of Froedtert and nor were any patients harmed by the Defendant's conduct. Also, in mitigation, is the Defendant's mental health struggles and history which were the cause of his transgressions. These factors are presented in mitigation when determining a sentence sufficient but not greater than necessary to serve the purposes of sentencing.

**The Character of the Defendant and the Needs of the Public**

Despite the Defendant's pervasive pattern of long-term mental health difficulties and social isolation, he has in the words of Dr. Collins, "a demonstrated history of prosocial activities and accomplishments, notwithstanding the allegations." First and foremost, at age 37 has no criminal record whatsoever. He has been able to work gainfully in the information technology field throughout his adult life.

As a child of an alcoholic mother and drug-using father, the Defendant's life continues to be affected by his parents' dysfunction. It has been a source of anxiety and consternation for him throughout his life. Sam Rebro, the ex-husband of Eric's mother's sister, was interviewed by mitigation specialist Lulli Buxton of the Federal Defender Services. Mr. Rebro characterizes the problems in the Jent household as a perfect storm of dysfunction. Ever since Eric was a child, Mr. Rebro stated, "His family life was dysfunctional. It is to this day. His mom is an alcoholic and his Dad smokes and does

coke. So yeah. He had a lot of yelling growing up, and breaking stuff. I always felt bad for the kids, I know it affected them. His other two brothers, they just moved out really quick. One enlisted in the Marines, the other went to Job Corps. Whereas Eric stayed home, and has been there for 35 years." He further noted that Eric's mother's drinking increased after one of her sons committed suicide and that she has been both physically and verbally abusive to the Defendant. Mr. Rebro characterizes the Defendant's marriage as unstable contributing to an untenable and chaotic home life for the Defendant. Indeed, as of the writing of this sentence, his parents have been evicted again with a move-out date by the end of April because of his mother's drunken and disruptive behavior.

The Defendant's own mental illness has been largely untreated until recently. He began counseling last summer which has greatly helped him and he is looking forward to the possibility of medication to augment his talk therapy. Rehabilitation will lead to no re-offending. The court's sentence should explicitly include conditions for cooperation with mental health treatment.

In regard to punishment, the Defendant will be forever branded as a felon and will impact his ability to work in IT. The nature of the charges and the third-party notification requirement which will surely follow if the Defendant is sentenced to probation, have already cost him at least one job and will certainly prove to be problematic for his livelihood down the line.

It appears that the Defendant's involvement in this offense stems from the stress of his family life, his depression and anxiety, and his social isolation which combined to create an environment in which the Defendant reacted in an addled manner. The Defendant continues to work towards ameliorating if not conquering these struggles.

Prison is not the place for his rehabilitation, though. He can live pro-socially while continuing to work and to work on himself while following the rules of probation.

While fully recognizing the severity of the Defendant's conduct, the Defendant asks the court to consider his lack of a criminal record, the mitigating qualities of the nature of the offense, and positive character traits as factors in determining a fair sentence.

**III. CONCLUSION**

For the other reasons so described, the court should find that there are mitigating circumstances in this case that are not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and which warrant a downward departure. The Defendant asks the court to consider a sentence of two to three years of probation which is sufficient but not greater than necessary to serve the purposes of sentencing.

Dated this 27th day of April, 2022.

Respectfully submitted,

*Electronically signed by:*

/s/__________________________
Thomas J. Erickson
Attorney for Defendant

Address and Phone:
316 N. Milwaukee St., Ste. 550
Milwaukee, WI 53202
(414) 271-0678